Belknap
No. 98-281

THE STATE OF NEW HAMPSHIRE

v.

NANCY KIVLIN

January 24, 2001

*Philip T. McLaughlin*, attorney general (*Philip B. Bradley*, attorney, on the brief, and *Janice K. Rundles*, senior assistant attorney general, orally), for the State.

*Behzad Mirhashem*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Nancy Kivlin, appeals her conviction of possession of a narcotic, *see* RSA 318-B:26 (1995) (amended 1998), following a jury trial in Superior Court (*Perkins*, J.). On appeal, she asserts that the court erred when it refused to either order the State to grant immunity to a witness she alleged would provide exculpatory evidence or dismiss the indictment. We affirm.

The following evidence was presented to the trial court. On June 15, 1997, the Laconia Police Department responded to a complaint that the defendant and her fiancé refused to leave a restaurant. Both appeared to have consumed alcohol. The police therefore advised them to refrain from driving. Because they lived close by, the couple began to walk home. One of the officers, Officer Leavitt, then heard them arguing and decided to remain in the area. As the couple walked past his cruiser, they were no longer arguing, but they were slightly swaying.

A few minutes later, Officer Leavitt heard a woman scream as if she needed help. He headed in the direction of the scream to find that it came from the defendant, who was yelling at her fiancé. The defendant reported that her fiancé had hit her. Both the defendant and her fiancé were taken into protective custody. They were transported in separate cruisers to the house of corrections.

Once there, an officer searched the defendant, and her personal property was inventoried. In her pants pocket the officer discovered a small package containing a white-powdery substance he suspected to be cocaine and some money. The defendant denied that the white substance was hers. Laboratory tests confirmed that the substance was cocaine. The defendant was then indicted for possession of cocaine. *See* RSA 318-B:26.

At trial, to rebut the charge that she knowingly possessed the cocaine, the defendant sought to present the defense that her fiancé inadvertently placed the cocaine in her pocket just before the couple was taken into protective custody. According to defense counsel, the defendant's fiancé had confiscated the cocaine from his sister, Dotty, the evening before. Prior to opening statements, defense counsel made the following proffer regarding what had occurred at the home of the defendant and her fiancé the day before they were taken into custody:

> [The defendant's fiancé] noticed [his sister] going in and out of the bathroom and [the defendant's fiancé] went into the bathroom to talk with his sister . . . at which time he found

her using cocaine. What he did is he told her that that was forbidden, confiscated the cocaine, and put it into his pocket. He, thereupon, told her since it was the evening that she needed to leave the next morning. . . .

Next day, [the defendant's fiancé] puts on his clothes; takes [the defendant] to work; then comes back after taking her to work; takes a shower and . . . puts back on his clothes and takes the belongings that he took out of his pants the previous night back into his pocket.

According to the proffer, the cocaine may have been in the fiancé's pocket when he and the defendant went to the restaurant later that night. Thus, when the police responded to the altercation between the defendant and her fiancé,

[the defendant's fiancé] figured that because he was being loud, and his testimony is that he was being louder of the two, he was going to be arrested. So what he did is 'he reached into his pocket, pulled out his wad of money which inadvertently contained the — what the State's evidence is, is a folded up baggie, put it into [the defendant's] pocket and said, "Here, here they come. Go in the house and bail me out." At that point, the police came to both of them, took them both into custody. Away they went. She just didn't know she had the cocaine.

Defense counsel sought to call the defendant's fiancé to prove that he inadvertently placed the cocaine in her pants pocket. Counsel was appointed for the defendant's fiancé, and a *Richards* hearing was conducted outside of the jury's presence. *See State v. Richards*, 129 N.H. 669, 531 A.2d 338 (1987) (failure to investigate validity of sole defense witness's Fifth Amendment claim of privilege violated defendant's right to fair trial under State Constitution).

The State asserted that if the defendant's fiancé were to testify, the State would be able to indict him for knowingly possessing cocaine. The fiancé's counsel apprised the court that she would advise her client not to testify on the ground that he might incriminate himself. Defense counsel, relying on Part I, Article 15 of the State Constitution and the Fifth and Fourteenth Amendments to the Federal Constitution, requested the court to order the State to grant the fiancé immunity or, in the alternative, dismiss the indictment.

After finding that the fiancé was not prepared to say that he knew he put the drugs in the defendant's pocket, the trial court denied the

defendant's request, and ruled that the proffered testimony did not rise to the level of being "directly exculpatory." *See State v. Monsalve*, 133 N.H. 268, 270, 574 A.2d 1384, 1385 (1990). The fiancé did not testify and the defendant was found guilty. She argues on appeal that she was denied due process because the trial court refused either to order the State to grant immunity to her fiancé or to dismiss the indictment.

"We analyze the defendant's due process claim under our State Constitution, and reference federal case law only to aid in our analysis. Because the Federal Constitution provides the defendant no greater protection, we decline to engage in a separate federal analysis." *State v. Winn*, 141 N.H. 812, 814, 694 A.2d 537, 539 (1997) (citations omitted).

█ Pursuant to RSA 516:34, the State, with authorization from the attorney general or county attorney, may grant a witness use immunity and request the trial court to order the witness to testify. *See* RSA 516:34 (1997). "It is well-settled that a defendant has no constitutional right to have immunity conferred upon a defense witness who exercises [his] privilege against self-incrimination." *State v. MacManus*, 130 N.H. 256, 259, 536 A.2d 203, 204 (1987). "However, situations could arise in which to deny immunization from prosecution would deprive a defendant of due process on the facts of [her] case." *Id.* (quotation omitted); *see also Monsalve*, 133 N.H. at 269-70, 574 A.2d at 1385. "No such violation will be recognized, however, without a showing by the defendant that the testimony sought would be directly exculpatory or would present a highly material variance from the tenor of the State's evidence." *Monsalve*, 133 N.H. at 270, 574 A.2d at 1385. "If the defendant demonstrates that . . . her case falls within these narrow circumstances, we then decide whether, on the facts of the defendant's case, the executive branch's refusal to immunize a defense witness denied the defendant a fair trial." *Winn*, 141 N.H. at 815, 694 A.2d at 539.

At the *Richards* hearing, the defendant proffered a number of questions to be posed to her fiancé. These included whether he had confiscated drugs from his sister, what he did with the drugs the night before he and the defendant were taken into custody, whether he removed the contents of his pants pocket the night before and then returned the contents to his pants pocket the following day, and whether he transferred the contents of his pocket to the defendant's pocket when he thought he was going to be arrested.

Following defense counsel's recitation of the proffered questions, defense counsel and the court engaged in the following exchange:

THE COURT: [C]orrect me if I'm wrong, my understanding is that [the defendant's fiancé is] not prepared to say that he knows that [the cocaine] was taken out of his pocket and then put back into his pocket the two times . . . that he undressed or changed pants, and he's not prepared to say that when he put the money in the defendant's pocket he knows that he put the drugs in her pocket. Is that correct?

. . . .

[DEFENSE COUNSEL]: [Y]es, there is no other evidence that there are any other drugs at the house other than those which were confiscated by [the defendant's fiancé] during his encounter with [his sister].

THE COURT: No clear statement by your client that he knows he put the drugs in the defendant's pocket?

[DEFENSE COUNSEL]: Correct.

THE COURT: Okay. The request is denied. The Court finds that it does [not] rise to the requirement of being directly exculpatory under the Supreme Court cases in *State v. Monsalve*, 133 N.H. 268 and *State v. McManus*, 130 N.H. 256. Okay.

The defendant argues her fiancé's testimony was substantive evidence that she did not knowingly possess the cocaine. The record, however, shows that the fiancé's proffered testimony falls short of being directly exculpatory and does not present a highly material variance from the tenor of the State's evidence.

■ According to defense counsel's offer of proof and proposed questions, the fiancé would have testified that he confiscated the cocaine from his sister and put it in his pocket with his money, that he emptied his pockets that night and refilled them the following day, and that he transferred his money to the defendant's pocket when he thought he was going to be arrested. According to defense counsel, however, the fiancé would not testify that he was certain that he put the cocaine in the defendant's pocket or that he knew that the cocaine was in his pocket at the time he transferred the money. While it is possible to infer from the proposed testimony that the defendant did not know she was in possession of the cocaine, the proposed testimony does not preclude the possibility that the defendant took the drugs from her house or from the defendant and put them in her pocket herself. Because the fiancé would not testify

that he knew he had the cocaine in his pocket, or that he placed the drugs in the defendant's pocket, his testimony is not directly exculpatory. Therefore, we conclude that the trial court did not err in denying the defendant's motion to either immunize her fiancé or dismiss the indictment. *See Monsalve*, 133 N.H. at 270, 574 A.2d at 1385.

*Affirmed.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; BRODERICK, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.